Chief Justice Bibb
delivered the Opinion of tho Court.
William Mitchel, and his wife, Polly, sole child and heiress of Patrick Doran, deceased, and the heirs of Andrew Godshall and Anthony Thompson, exhibited their bill against Thomas Withers and others, the heirs of James Withers, and Jere. Buckley, to have a division and conveyance of one-third of two tracts of laud, the one for 600 acres, the, other for 200 acres, located by said Doran, the *324 ancestor of Polly, under an agreement between Doran, James Withers and George Withers.
Doran’s covenant to lonatic land for Withers.
Allegations of the bill.
On the 24th April, 1780, that covenant was signed and sealed by the three parties — but it is in its provisions, a separate undertaking on the part of Doran to locate for James Withers 2,400 acres of land warrants, and a separate undertaking to locate warrants for 500 acres, for George Withers. The locations undertaken for James are involved in this controversy.
By the agreement, Doran was to have one-third of the land located — the owner of the warrants to take one-third, first choice, Doran to have one-third, second choice, the other third to remain for the owner of the warrants: each party to be "at the proportionable expense, agreeable to the land they hold.”
The bill charges, that two of the warrants put into Doran’s hands by James, issued to himself, the one for 200 acres, and the other for 600 acres, (which are now in controversy.) and that the other two warrants put into his hands by said James, issue.d to Thomas Withers, the father of said James, for 804 acres each; that all these warrants were located by Doran; and that he has complied with his part of the agreement. That the grants for the 200 acres, and the 600 acres issued to said James Withers; that one of the locations made of 804 acres, in the name of said Thomas, was withdrawn without the privity or consent of Doran, from the waters of Little Benson, where he had located it, and by the authority of said Withers, located on the waters of Green river; the other location of 804 acres, in the name of said Thomas Withers, has been carried into Grant and sold — and that Doran has never received any part of those two locations; that Doran, by an instrument of writing, now lost, assigned his interest to Andrew Gudshall, now deceased; that said Gudshall, on the 25th October, 1811, assigned bis interest to the co-complainant, Thompson; that the 200 acres located, surveyed and patented to Withers by the services of Doran, have been transferred to Buckley with full notice of the *325 claim of complainants; that the title to the 600 acres, located surveyed and patented to Withers, by the services of Doran, is in the heirs of Withers; that one of the heirs, Thomas Withers, has possession of the whole of that tract, by purchase from his co-heirs. The bill then refers to certain suits which had been long depending, and then depending; but by the decrees rendered in pursurance of the mandate of the Court of Appeals, one against Young, the other against Steele, the rights are settled, although the execution of those decrees remains to he done — -and by subsequent supplemental bills, the. final decisions of those suits are stated, and that the defendants, the heirs of Withers have succeeded — the pendency of these suits, and the repeated assurances of the defendant, Thomas Withers, that as soon as those suits were ended the complainant, Thompson, should have his part, are charged as the reasons for not having proceeded sooner in demanding their part — but that, since the succesful termination of the suits was ascertained, the defendants have refused to fulfil their agreement.
Prayer of the bill.
Answer of Withers’ heirs.
The prayer is for a division and allotment of the locator’s part of each survey of 200 acres, and of 600 acres; but if, for any reason, the title of Buckley or any other under him, should obstruct such a decree, as to that tract, then that their claim be wholly satisfied out of the 600 acres.
The answer of the heirs of Withers, admits the contract for locating, and asserts that their ancestor paid Doran, on account of the expenses, one hundred dollars — they admit the location of the 200 and 600 acres, but deny he entered the remaining warrants “for the said James Withers” — “but as they believe, appropriated them to his own use.”— they admit the sale of their chance of the 200 acres for a trifle; they admit the suits referred to for the 600 acres, and a decree of the Court of Appeals against Young for a small part, and an interlocutory decree against Steele and others, for another part — they deny any written agreement between Doran and Gudshall for Doran’s interest, and call for the proof of it — they admit the sale of the other heirs *326 the defendant, Thomas Withers, of the 200 and 600 acres: and Thomas Withers says, that finding Andrew Godshall in possession of a part of the 600 tract, he by an agreement of the 11th September, 1809, purchased all his “interest in and to the said land, and possession,” and exhibits that agreement: he stales that the complainant, Thompson, purchased with a full knowledge of the agreement of 1809 — he denies premising Thompson any lands or any thing else, except as stipulated in the agreement of 1809, with Gudshall. which agreement he is ready and willing to perform, as soon as the conditions in said agreement have happened ; that be is prosecuting those suits in the agreement, alluded to with good faith to bring them to a close, and whenever that is done, he is willing to pay said Thompson whatever he maybe, entitled to under that agreement, as the assignee of Gudshall.
Supplemental bills.
Decree of the circuit court.
The agreement of i 809, relied on by Thomas Withers, made with Gudshall, witnesseth:
“That the said Gudshall hath this day delivered to the said Withers full, quiet and peaceable possession of the farm whereon he now lives, together with the orchards, houses and the benefits thereof, for and in consideration of receiving fifty acres of land” — “if said Withers shall prove successful in James Withers’ claim” — if not successful, then one hundred dollars — the fifty acres to be taken “on one side or end, except the part now delivered to the said Withers.”
By supplemental hills, the final decision of the, suits of Withers with Steele and with Young, are charged, that they were in favor of the validity of the entry, and had a recovery of land under the entry of James Withers. To these supplemental bills and allegations, the defendants have made no answer.
Buckley, although served with process, has not answered.
Upon hearing, the. court decreed an account to be taken, by commissioners, of the expenses of the suits respecting the lands — the one third assessed *327 as the proportion to be paid by complainant, to the defendant, as the locator’s proportion of those charges was approved; and upon payment or tender .thereof, the complainant was to have a bf his proportion under the claim of Doran, as locator — : fifty acres were laid off according to the agreement of 1800, and decreed to Thompson, as being entitled under the assignment of Gudshall; the residue, after laying off the fifty acres, was divided the safe land into three, equal parts of each tract, in value, and the disputed land into three equal parts, in value, in each tract; the commissioners having reported the lots so laid off, the court called upon the defendants to make first choice, which they declined; and thereupon the complainant made choice of his third part, and the court decreed the several lots, so laid off by the commissioners, and chosen by the complainant.
Defendant’s point of defence.
Questions stated.
From this decree Thomas Withers alone has appealed.
The answers of the defendants make but three. points of defence — 1st, the failure, of Doran to locate the 2.-100 acres; 2nd, the want of any written agreement between Gadshall and Doran, and therefore, that Thompson has no right; and 3rd, the agreement of 1809: to these the counsel for the appellant has added — 4th, that tin re is no proof the complainants are the heirs of Gudshall; 5th, that the decree for rise fifty' acres, in favor of Thompson, is not demanded nor within the scope of the bill; 6th, that the- whole loss by conflicting claims, should have been thrown on the-locator — with objections to the details of the decree.
There are hut two questions of any difficulty — 1st, whether-Doran or his assignee shall be refused specific execution, because of his failure to locate the whole quantity of warrants; 2ndly, whether the agreement of 1809, was a sale of the locator’s interest in the lands.
The other questions are answered by an attention to the parties to the bill, the frame of the bill, the answer to the bill, and to the decree.
Locator for part of the land, must shew he located all the warrants furnished, and embraced in the contract, or why not, before he can have a decree for his part of the land he secured.
First, the great question is, as to the right to have specific execution; and this turns upon the single question of performance by Doran, of his part. Upon this point, the court have perceived and felt the difficulty. For undoubtedly, to entitle a complainant to specific execution, he must show performance on his part, or that which is equivalent to performance. That Doran has located the 200 acres and the 600 acres is clear; it is admitted by answer. To deprive him of his reward for those services, performed by a. knowledge of the country, acquired by toils and hazard of life, the fact by which lie is to be cut off. should be clear also. The defendants allege that Doran appropriated the residue of the warrants to his use. Of this there is no proof. If the warrants were in the name of James Withers, and Doran has appropriated them to his own use, those warrants could have been traced, and the fact proved by the defendants. Doran states in his bill, and distinctly makes the allegation to shew performance on bis part, that of the warrants furnished by James Withers, as part of the 2,400 acres, two of 804 acres each, were issued to Thomas Withers; that he did locate those warrants in the name of Thomas Withers, who was the father of James. To no part of this allegation have the defendants made a fair or direct response; but by evasion, say he did not enter any other of the remaining 2,400 acres, for “the said James Withers.”
The writing entered into between Doran and Withers does not specify the warrants, nor does it appear by the contract, that the warrants were then delivered. The covenant on the part of Doran is, “that the said Doran do oblige himself to locate— two thousand four bundled acres land warrant, in the said county" and district, for James Withers, his heirs or assigns; for which service we, the said James Withers,” &c. If the warrants delivered to Doran by James Withers to be located under this contract, were as to 1,608 acres, issued to Thomas Withers, the father of James, and 200 and 600 acres only issued to James Withers, it is not the fault of Doran that he located but the 200 and 6000 acres *329 in the name of James Withers; and located the two warrants for 304 acres each, in the name of Thomas Withers. That such were the facts, is averred in the bill. The answer does not deny these facts but evades. Ignorance on the subject of that negotiation, by their ancestor, is not pretended. On the contrary the answer alleges, “that their ancestor paid Doran one hundred dollars to defray the expense of his lands.” flow did they acquire that information? No such is contained in the contract Was it by receipt taken for the money as well as for the warrants? May not the defendants hold a receipt for the warrants which would verify the fact they have evaded to answer?
An agreement in writing, to locate 2,400 acres land warrant, held not to be an acknowledgment that the warrants were received.
The counsel for the appellant have argued as if the contract for locating was evidence of the receipt of 2,400 acres of 1; no such receipt expressed-ad warrants. There is and the contrary seems to be the proper inference from that writing. That the, contract for locating should precede the delivery of rhe Warrants, and that the delivery of the warrants should precede a receipt for them, is the visual course of transacting business. This contract expresses no delivery of warrants to Doran. No warrants, nor number of warrants are specified. Upon the face of the contract it seems to look to quantity to be located, not to warrants then shown or delivered, for the expression is, “2,400 acres land warrant,” which docs not comport with the fact of several warrants, for 200 acres, for COO acres, &o. if then delivered. The use of the singular number, “land warrant” in the contract, twice occurs — and these are the only places in the whole contract where the number of acres or the warrant is mentioned; in both instances “warrant,” in the singular number, is used. The two entries alluded to in the bill, in the name of Thomas Withers, are produced in evidence by copies from the record. They are both made on the 15th May, 1780; the one for 804 acres, on warrant No. 236, on the waters of the Kentucky, on the south side, “to include a spring andan improvement made by Patrick Doran and company, about two miles from Benson's Cabin. *330 on the Buffalo road” — the other, “to include a spring and an improvement made by Patrick Doran and company, about twelve miles from Benson’s Cabins, on the Buffalo road.” A third location in the name of Thomas Withers, is for 804 acres, joining Hammod's settlement and pre-emption, on Hammond's Creek, if Doran made this third entry also upon a warrant furnished by James Withers, he has done more than he was bound to do under his Con tract, hut can not be recompensed under it.
Contract for "the possession of the farm and the benefit" thereof, hold not to be a sale or the preverty, under the circumstances here.
Til at Doran had, hi truth, fulfilled his part of the contract, is corroborated by the fact, that Gudshall was in possession, and had made his valuable improvements of farm houses and orchards, under the locator’s claim. That the defendant, Thomas Withers, who has purchased the interest of his co-heirs, frequently, during Gudshall’s possession, acknowledged that Gudshall was entitled to the locator’s interest, is proved by Thomas Oliver, Roderick Perry, and others; which interest he claims to have purchased of Gudshall in 1800. K Doran had failed to comply, and had appropriated the warrants furnished by James Withers to Doran’s use, these facts niust have been then know. We can not, therefore, proceed upon the ground that Doran has been supplied with warrants which he failed to locate, or which lie applied to his own use in violation of the contract, and by forged assignments of the warrants.
The second question is, did Thomas Withers, the defendant, purchase the locator’s interest, by the agreement of 1809 with Gudshall?
That, agreement, oss its face, show's that Gad-shall was in possession; that he had made a farm, built houses, and planted orchards. The delivery of that possession of the farm and houses, orchards, and‘’benefits thereof,” purports to be the consideration for which Thomas Withers agreed to give the fifty acres, in case of the successful issue of James Withers’ claim, or one hundred dollars, if unsuccessful. This possession was upon the tract of sis hundred acres only. That Gudshall claimed *331 under Wilbers’ entry, appears from the nature of the stipulation for the eventual success of the claim, as well as by the answer, which insists that this agreement was a sale and purchase of Doran’s original interest, as locator. By this agreement, Withers contends he has acquired not only the benefits of possession of the farm, as expressed on the face of the writing, but an interest extending beyond ¿he possession delivered, and to the whole extent of the locator’s claim in that tract; and also in the tract of 200 acres, of which no possession was delivered. '“Possession of the farm, together with the houses, orchards, and the benefits thereof,” are the subjects of that contract. The defendant would extend it to lite fee simple interest in one-third of the 600 acres, and of another tract of 200 acres. Possession and the right of property are different, not synonymous. The defendant claims what the contract does not express nor imply. As well might the tenant at will, who was Jet into possession by the landlord, claim thereby the fee simple; or one tenant in common, claim that his co-tenant’s act of letting him into possession, had extinguished his interest in the fee simple estate; that by a stipulation as to possession, he had become the sole owner of the right of properly not stipulated for between them. -We think the construction of that agreement will not hear the inference attempted to be drawn by the defendant. The facts upon which that agreement was based, and the understanding of the parties at the time, and of the defendant himself, then and afterwards, as proved in the cause, accord with the construction we give to the instrument. The farm with the houses and orchards thereon, was but part of Gudshall’s possession; the residue he retained. He was, at the time, interested with Thompson in a mill within the survey, and the possession of that was retained.
Where, in a bill for a conveyance, by the purchaser of the vendee of the holder of the legal title, the middle party, or his heir, unites as complainant, or confesses by his answer or failure to respond, the sale by him, it need not be proved.
*331 3dly, as to the last writing between Doran and Gudshall. The recognition and acknowledgment .if the locator’s right, of Gudshall’s interest under the locator, and of Thompson’s interest under it, after ids purchase from Gudshall. is abundantly tes *332 tilled to have been made by the principal defendant, Thompson, before his contract of 1809 with Gudshall, and afterwards.- The existence and loss of tho writing between Doran and Gudshall improved. The defendant, in one breath, denies the existence of that writing, and in the next claims under it by the agreement of 1809. But of what importance is the proof of the former existence of that writing? The heiress of Doran is a party complainant, and asserts and admits the transfer to Gudshall; and Gudshall’s transfer to Thompson is exhibited. According to the frame of this bill, the enquiry is of no concern to the defendant; If Doran never transfered, his heiress is a party and asks and consents to a decree in favor of Thompson, the assignee of Doran’s interest. If she was defendant, and by answer or bill pro confesso, admitted the fact of transfer to Gudshall, that would be sufficient for the complainant, Thompson. All that the defendant can require, or the court look to, is that Doran's interest,be represented, and the true holder of it be a party to be bound by tho decree, so that the decision in this controversy shall b» final between tho interests in litigation. That Doran’s heiress, is a party complainant, confessing and assenting to tho fact, and bound as a party to the decree, is as sufficient as if the last assignment of Doran’s interest were found and produced, if the defendant had relied on length of time to bar the relief, and the. connection between Doran’s equitable right and Gudshall’s possession had been necessary to repel that defence, then the execution and date of that assignment might have been important, and the admission of Doran’s heiress might have been insufficient to repel or defeat the defence. But no defence is made, no question arises upon which the date or actual farmer existence of such an assignment is of any weight in assisting or resisting the defence of ‘Withers against Doran’s interest as locator.
4thly, It is objected that the complainants have not proved themselves to be heirs. Those facts are not put in issue by the answers.
6thly. It is objected to tho decree, that the quan *333 tity of 80 acres engaged by Withers to Gudshall, for his possession of the farm, is not demanded, nor within the scope of the bill and proceedings, so as to authorize the decree in that behalf pronounced,
There can be no decree for a thing without the scope of bill and its prayer.
On the reversal for the actor here, the court will go back to other errors, and reform the decree, though it may be, thereby, made worse for the locator.
Where the contract of the locator is for one third, the second choice of a division into three parts, the division shall be into an equal number of acres, regardless of its value.
*333 It is true that these fifty acres are decreed to Thompson; and it is true that they are not demanded by the bill. They are not assigned to Thompson by Gudshall. Thompson is entitled to the locator’s interest of one third, which was assigned to Gudshall, and by him to Thompson. But Gudshall, by the agreement of 1809, acquired a farther interest in fifty acres, over and above that third, which Withers is bound to compensate out of bis part remaining, after satisfying the locator’s interest. This additional interest does not pass by the assignment, from Gudshall to Thompson, but remains to Gudshall to be enforced by suit against Withers, if he shall not voluntarily satisfy the claim. For this error the decree must he reversed. And that reversal imposes upon this court the duty of reforming the decree. In so doing a result will ho produced more prejudicial in the end, perhaps, to Withers, than the decree rendered.
For Thompson, as assignee of Doran’s interest, is entitled to one-third, and Gudshall, by the agreement of 1809, is entitled to 50 acres more, which however, can not be decreed in this cause. But the decree, as pronounced, has laid off the fifty acres first, for the satisfaction of the agreement of 1809, and given for the locator’s interest only one-third of the residue, instead of giving to the locator’s interest the third of the whole, leaving Wilhess to satisfy his contract of 1809, out of his own part. So that after correcting so much of the decree upon the application of Withers, as relates to the fifty acres, corrections of the other parts of the decree, necessarily follow; the first of which is, to direct that the full third part, be assigned for the locator’s interest, not diminished in quantity by the fifty acres contraded to Gudshall under the agreement of 1809.
But the decree of the circuit court directed the commissioners to divide the tracts into three parts, *334 equal in value, with a view of giving to Withers the first choice, and to the locator, the. second choice, and the remaining there to Withers, according to the original contract with Doran; and they did give the first choice of the lots as equalized by the commissioners, to the defendants below, who declined, and thereupon the choice was given to the complainant, Thompson.
In partitions of land, the chancellor will respect the improvements made by each party, notwithstanding there was a stipulation, that one party should have the first and the other the second choice, of parts equal in quantity.
To this there are two prominent objections. 1st, that the agreement: with the locator was, that the owner of the warrants should take first choice of one-third in quantity, (not one-third in value,) the locator to have second choice, and the residue to remain to the owner of the warrants. This first choice in quantity was well calculated to stimulate Doran to seek for good land; and therefore, the specific execution of the original agreement, although apparently intended, was not pursued.
Sadly, The, circumstances which had transpired between the contract for locating and the partitions rendered that- mode of election adopted by the court, improper, particularly in the tract of GOO acres, Withers had purchased of Gudshall the farm and improvements. and settled on them, and thereby had not only made an election to take that part, but had acquired a rigid, in equity to be protected in the division, so as to secure to him the improvements,, and to Thompson, in making choice, from encroaching upon that part of the. tract; at least so far as was consistent with a fair division. So Thompson, had, in another part, built a mill, and thereby signified his election, to take his part to include his improvements; and it moreover appears, that after Withers’ contract of 1809 with Gudshall, Thompson was encouraged by too declarations of Withers, and assurance of the safety of the mill then building by Thompson and Gudshall, under the claim of Doran as locator, to proceed, and to purchase out Gudshall’s interest. These acts of Wilbers, in purchasing the possession of Gudshall, and settling on one part of the tract, suffering and encouraging the improvements of Gudshall and Thompson on another part of the tract, are, equivalent to their ejec *335 tions, and lay the basis of a division of that tract incompatible with the first and second choice of one-third part each, as stipulated in the original' contract for locating. It would be improper to cede to Withers the- first choice, and leave him to take. Thompson’s mill; and it would be equally improper to suffer Thompson, in bis choice, to encroach upon the farm and orchards and improvements of Withers, unless a fair division rendered some such encroachments indispensable. So the improvements on the tract of 200 acres under Withers, required the equitable attention of the court in the division, it is the duty of a court of equity to cause these improvements to he assigned to their respective owners, (whose labor arid money has been thus inseperably fixed on the brad,) so- far as can be done consistently with an equitable partition. This principle is recognized in the cases of Hart's devisees vs Hawkins, 3 Bibb, 510; Smith vs Frost, 1 Bibb, 377.
No warranty was implied in the contracts of locators, of the title of the land; good faith, and ordinary skill and diligence, and no more were to be expected.
Lastly, it is objected by the appellant to the decree rendered, that the whole loss by coflicting claims ought to have been thrown on the locator.
An implied contract on the part of a locator, so to warrant his locations against conflicting claims, would go beyond that which the. law would imply ordinarily, in undertakings to conduct a labor or enterprise. To bind a locator of laud warrants under the law of 1779, to anticipate ail the rules of construction for governing entries and surveys, since adopted by the courts, and to have guarded against prior and subsequent; conflicting entries, according to these rules, would he harsh and most unreasonable. Locators arc held to good faith, ordinary skill arid diligence in the execution of the trust; the law implies no more from the undertaking. Such is the rule of responsibility applied to locators of land warrants, in Smith vs Frost, 1 Bibb, 377,
The losses sustained by conflicting claims are not. chargeable to the fraud, negligence or misconduct of Doran, but to the difficulties, uncertainties and perplexities insuperable iron the. system adopt- *336 oil by the art of 1779, for disposing of the vacant lands. Doran and those claiming under him must bear his proportion of losses and injuries by conflicting claims, and no more.
Decree and Mandate.
It is therefore decreed and ordered, that the parts of the decree pronounced in this cause, declaring the right of the complainants to have a division and conveyance of the interest engaged to Doran as locator, in the tracts of 600 acres, and of 200 acres, in the decree mentioned, and in apportioning the costs of investigating and litigating the conflicting claims, and in directing the sum so apportioned to be paid to the defendants, and in defecting the defendants below to pay the costs of this suit, be affirmed. But this court disapproves of the manner in which the decree has left the payment of the money to the defendants to be enforced; disapproves of the decree for the conveyance of the fifty acres, because it is not demanded by the bill; and disapproves of the division as made and decreed and those parts of the decree are reversed, and the cause is remanded to the circuit court, to cause a division to be made, by commissioners, of the locator’s interest of one-third in quantity, in each of the two tracts of 600 acres and 200 acres; that the commissioners be instructed, in the tract of 600 acres, to assign to the defendants two-thirds in quantity of acres, to embrace the improvements purchased of Gudshall, and such others as the defendants may have made, and to the complainants, one-third in quantity of acres, to embrace his improvements. Neither party in the division to be disturbed in his improvements, except, so far as may be necessary to a fair division by quantity of acres; assigning to the complainants one-third of the safe land, and one-third of the conflicted land, and to the defendants two-thirds of the safe land, and two-thirds of the conflicted land; that in the tract of 200 acres, one-third in quantity of acres be assigned to the complainant, having regard to due proportions of the safe and of the conflicted land, and also assigning to the defendants the part to include such improvements as they or those claiming under them, *337 may have made, as far as consists with a fair division; with directions farther to that court, to set off the costs of this suit in the court below, against the proportion of the costs and charges assessed ascertained in the former decree, as the complainant’s proportion of the charges for investigating the claims, and if a balance remains due to the defendants on that score, to assign a day for payment and enforce it according to the usages of the court; and for such other and farther proceedings therein as may be necessary and proper, according to the principles and usages of equity.
Marshall for appellants; Talbot for appellees.
And it is further decreed and ordered, that the defendants in this court, pay to the plaintiffs their costs, in this court, in this behalf expended,